## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| EQULLA M. BROTHERS, as the Personal Representative and Administratrix of the Estate of Daryl Clinton, Deceased, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-21-418-SLP |
| | ) | |
| TOMMIE JOHNSON III, in his official Capacity, | ) ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S MOTIONS IN LIMINE

Plaintiff Equlla M. Brothers, as the Personal Representative and Administratrix of the Estate of Daryl Clinton, Deceased, submits the following Motions in Limine. For the reasons stated herein, Plaintiff requests that the Court prohibit all other parties, including their attorneys, witnesses, and other representatives, from mentioning or bringing before the jury, directly or indirectly, or by any other means, the following items contained herein. Plaintiff will address each item in turn.

### GENERAL STANDARDS OF ADMISSIBLITY

Under Fed. R. Evid. 402, "[r]elevant evidence is admissible unless" the U.S. Constitution, a federal statute, another rule from the Federal Rules of Evidence, or other rules prescribed by the U.S. Supreme Court provides otherwise. "Irrelevant evidence is not admissible." Fed. R. Evid. 402. Federal Rule of Evidence 401 defines relevant evidence as that evidence which "(a) has any tendency to make a fact more or less probable than it

would be without the evidence; and (b) the fact is of consequence in determining the action." Under Fed. R. Evid. 403, the Court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of…unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

## MOTIONS IN LIMINE

### I. Any Criminal or Civil Litigation History Involving Plaintiff, Daryl Clinton, or Other Family Members of Daryl Clinton.

Any legal history involving Plaintiff, Daryl Clinton, or other family members of Daryl Clinton (Emmitt Clinton, Dwight Clinton, Earnestine Thomas) should be barred because such evidence is irrelevant and would be unduly prejudicial, confusing, and distracting.[1]

Any arguments that such evidence is admissible under Fed. R. Evid. 404(b) as an "other act" are erroneous. Such analyses are determined by a four-part test established by Huddleston v. United States, 485 U.S. 681, 108 S.Ct. 1496, 99 L.E.2d 771 (1988): (1) The evidence must be offered for a proper purpose under Fed. R. Evid. 404(b); (2) The evidence

---

[1] *See, e.g.* Bryce v. Trace, Inc., 2008 WL 906142 (W.D. Okla. March 31, 2008) (plaintiff's prior lawsuits were excluded via Fed. R. Evid. 401-403 in employment case, where prior lawsuits occurred before plaintiff's employment with defendant); Martensen v. Koch, 2015 WL 332694 at *2 (D. Colo. January 26, 2015) (court excluded civil defendant's litigation history via Fed. R. Evid. 403 because "the sideshow threatens to overwhelm the circus."); Van Deelen v. Johnson, 2008 WL 4683022 at *2-5 (D. Kan. October 22, 2008) (excluding plaintiff's prior lawsuits against one or all of the defendants via Fed. R. Evid. 404(b)); Moreno v. Taos Cnty. Bd. of Cmmr's, 2013 WL 12090673 at *2 (D.N.M. May 3, 2013) (court excluded plaintiff's prior lawsuits and criminal conduct because prior lawsuits were irrelevant, such lawsuits did not rise to a level of habit, and the evidence constituted impermissible character evidence).

must be relevant under Fed. R. Evid. 401; (3) The probative value of the evidence must not be substantially outweighed by its potential for unfair prejudice under Fed. R. Evid. 403; and (4) The district court, upon request, must have instructed the jury pursuant to Fed. R. Evid. 105 to consider the evidence only for the purpose for which it was admitted. *See* United States v. Henthorn, 864 F.3d 1241, 1248 (10th Cir. 2017). This analysis under Fed. R. Evid 404(b) "involves a case-specific inquiry that is within the district court's broad discretion." United States v. Mares, 441 F.3d 1152, 1157 (10th Cir. 2006) (*citing* United States v. Olivo, 80 F.3d 1466, 1469 (10th Cir. 1996)).

As to Plaintiff and Daryl Clinton's family members, any of their legal histories are wholly irrelevant. There is no basis to examine such history, and it would distract from examining the essential elements of Plaintiff's claims. Indeed, such histories have nothing to do with Daryl Clinton's August 2019 detainment at the Oklahoma County Detention Center ("OCDC"). As to Daryl Clinton, his legal history is also wholly irrelevant. It is irrelevant whether Daryl Clinton had a lengthy or nonexistent criminal record when analyzing whether Defendant fulfilled its duty to providing adequate access to medical care at OCDC. The standards placed on Defendant for providing adequate access to medical care do not change depending on the legal history of a particular detainee. Thus, this evidence must be excluded.

## II. Comments or Suggestions that Daryl Clinton, Due to his Arrest Record, was Familiar with the "Process" of Requesting Further Medical Care at OCDC.

In his Motion for Summary Judgment, Defendant indicated (without citation to any evidence as required by Fed. R. Civ. P. 56(c)) that Daryl Clinton was familiar with the

process of obtaining medical care at OCDC. Defendant has merely made this bald assumption based on the fact that Daryl Clinton had been arrested and detained previously. First, the record is replete with shortcomings of medical staff despite Clinton's condition and pleas for help. [See Doc. 80 at Exhibit 16 (Peek Report); Exhibit 21 (Depo. of Adler at 33:1-7; 47:17-20; 49:21 – 50:6)]. Second, there is no evidence that Daryl Clinton had any such specific knowledge. The evidence simply shows that Daryl Clinton was in a dire medical situation and consistently pled for help starting on August 6, 2019 and until his death on August 10, 2019.

### III. Comments or Suggestions that Daryl Clinton was Treated by a Physician for his Spinal Injury at OCDC and Opinion Testimony Regarding Clinton's Injuries from Jacob Strohl, M.D.

As fully explored by Plaintiff in her Response to Defendant's Motion for Summary Judgment [Doc. 80], Defendant expressly violated the Discharge Instructions entered by St. Anthony's Hospital who evaluated Daryl Clinton before his detainment at OCDC. The Discharge Instructions (logged on August 6, 2019 on or around 2:06 AM) expressly **ordered a follow-up appointment to be scheduled "as soon as possible" for a physician visit to occur within two days** (or by August 8, 2019 around 2:06 AM) and ordered Clinton and the accompanying officer to return to the emergency department if his condition worsened. [See Doc. 80 at Exhibit 13 (SSM Discharge Instructions)].

The evidence shows that Jacob Strohl, M.D. merely performed a tardy mental evaluation and nothing else. [See Doc. 74-20 at p. 1]. Furthermore, Dr. King (the medical director) never treated Daryl Clinton in person. Dr. King merely spoke with medical staff

over the phone and ordered a psychological consult despite Daryl Clinton's rapidly deteriorating physical condition.

Defendant is likely going to try and resort to some type of argument that Clinton was treated properly, because it is undeniable that Defendant directly violated Clinton's Discharge Orders from St. Anthony's Hospital, which required a follow-up appointment with a physician within two days, or by August 8, 2019 just after 2:00 AM. This is vital to note because specifically in the context of access to medical care claims, the Tenth Circuit has held that "merely doing *something* (**with no reference to the underlying condition**) does not necessarily insulate one from liability." Lucas v. Turn Key Health Clinics, LLC, 58 F.4th 1127, 1139 (10th Cir. 2023) (italics in original, underline added). *See also* Id. at 1143 (…a physician's role often involves treating the patient while simultaneously considering the need for referral to someone with more specialized training at the same time"). As a psychiatrist, Dr. Strohl was in no way professionally competent to treat a spinal fracture, nor did he make any further referral to a professional competent to treat Clinton's symptoms. Thus, any comments or suggestions that Daryl Clinton was ever treated by a physician for his spinal injury at OCDC would be inaccurate, distracting, and a mischaracterization of the evidence.

Within this same vein, this Court should preclude Dr. Strohl from giving any medical opinion testimony regarding Clinton's spinal or physical injury, including opinion testimony on any information not known by Dr. Strohl at the time he interacted with Clinton. Dr. Strohl has not been designated as an expert witness. Furthermore, Dr. Strohl is not qualified to give any opinion testimony outside of matters related to psychiatry. Dr.

Strohl is not qualified to render opinion testimony regarding spinal injuries, similar physical injuries, and paralysis. *See* <u>United States v. Gugnani</u>, 29 Fed. Appx. 512 (10th Cir. 2002) (affirming finding that a psychologist "was not qualified to assess plaintiff's physical complaints…").

## IV. <u>Comments or Suggestions that Defendant is not Liable for the Acts and Omissions of Medical Staff.</u>

It is apparent from Defendant's Motion for Summary Judgment that he may shift all blame in this matter to Turn Key Health and the medical staff of OCDC and further opine that Defendant is not liable for such conduct. This would be a misstatement of law that would confuse and mislead the jury.

In <u>Sealock v. Colorado</u>, 218 F.3d 1205, 1211 (10th Cir. 2000), the Tenth Circuit recognized two types of conduct which may constitute deliberate indifference in a prison medical case: (1) a medical professional failing to treat a serious medical condition properly; and (2) a prison official preventing an inmate from receiving medical treatment or denying access to medical personnel capable of evaluating the inmate's condition. It is important to note that in fulfilling a medical "gatekeeper" role, security and medical staff can act unlawfully for **delaying or refusing** medical care. As discussed more fully in Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment [Doc. 80], analyzing whether a constitutional deprivation occurred in the medical context at a jail can be shown by establishing "systemic failures" by the combined acts or omissions of multiple individuals acting on Defendant's behalf. <u>Burke v. Regalado</u>, 935 F.3d 960, 999 (10th Cir. 2019).

The medical staff's failures must be considered in the constitutional analysis against Defendant, given the nature of the systemic relationship of security staff with medical staff in handling inmate supervision and access to medical care. Indeed, review Lucas, 58 F.4th 1127, 1144 (10th Cir. 2023), where the Tenth Circuit acknowledged the potential to bring systemic failure medical care claims against **both (1) the Tulsa County Sheriff and (2) Turn Key Health** (the medical contractor) but specifically noted that the systemic failure claim analyzed for both Defendants was premised on **conduct of the jail's contracted physician and medical staff**. Id. at 1143-44. This is a vital observation to make. Indeed, the Lucas Court closed on this front by citing prior Tenth Circuit authority and noting that "municipal liability may exist without individual liability: for example, for a systemic failure of medical policies and procedures." Id. at 1144.

Although it is clear that the security staff clearly acted with deliberate indifference and those very acts and omissions were the result of Monell-level liability against Defendant, Defendant cannot simply point the finger at medical staff and claim an empty chair defense because the medical staff were not Defendant's direct employees. It is well-settled that medical personnel rendering services at a jail such as OCDC who are agents of a contracted medical entity (such as Turn Key) are "state actors subject to the strictures of the Fourteenth Amendment." Strain v. Regalado, 977 F.3d 984, 987 n. 1 (10th Cir. 2020). Thus, reading this well-settled principle enunciated in Strain along with the systemic failure analysis recently used by Lucas requires the assessment of liability against Defendant for not only security staff failures, but medical staff failures as well. Defendant cannot use the Turn Key Contract to delegate away a duty that has been established by binding Tenth

Circuit precedent. The Supreme Court has emphasized that medical care rendered by an independent contractor does not prevent § 1983 liability against a jail official. West v. Atkins, 487 U.S. 42, 56 (1988) ("**Contracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody**, and it does not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights" (emphasis added). *See also* Rogacki v. Jefferson Cnty., 2022 WL 16551336, at *13 (D. Colo. Oct. 31, 2022) (citations omitted) (stating that public entities cannot avoid § 1983 liability by delegating duties "to the professional judgment of others"); Spencer v. United States, 2003 WL 23484640, at *5 (D. Kan. Dec. 16, 2003) (finding that a municipality operating a county jail "had a non-delegable duty to care for plaintiff while incarcerated…"); Millward v. Bd. of Cnty. Commissioners of the Cnty. of Teton, Wyoming, 2018 WL 9371573, at *17 (D. Wyo. Oct. 19, 2018) (agreeing with plaintiff that government's duty to provide adequate medical care to its detainees remains a fundamental, ongoing non-delegable responsibility").

## V.     Comments or Suggestions that Defendant's Duty was Limited to Alerting Medical Staff of Daryl Clinton's Condition.

For similar reasons as discussed in Section IV, Defendant must be restrained from misstating the constitutional standards applicable to this case. As discussed above, the Tenth Circuit has made it clear that there are two grounds to establish deliberate indifference in a prison medical case: (1) a medical professional failing to treat a serious medical condition properly; and (2) a prison official preventing an inmate from receiving

medical treatment or denying access to medical personnel capable of evaluating the inmate's condition. Sealock, 218 F.3d 1205, 1211 (10th Cir. 2000).

Within this context, the two-step analysis from the Eighth Amendment applies. First, the objective prong requires that the injury must be sufficiently serious to constitute a deprivation of a constitutional dimension. Second, the subjective prong requires that a prison official knew of and disregarded an excessive risk to inmate health or safety. Lucas, 58 F.4th 1127, 1178 (10th Cir. 2023). Given Clinton's pretrial detainee status, his rights at issue are covered by the Fourteenth Amendment. However, such claims are still analyzed under the two-step Eighth Amendment framework. See Smith v. Allbaugh, 987 F.3d 905, 910 n. 1 (10th Cir. 2021). In proving the subjective prong of the analysis, a detainee may show that a delay in providing medical care caused unnecessary pain or a worsening of the detainee's condition. In fact, even brief delays may be unconstitutional. See Mata v. Saiz, 427 F.3d 745, 755 (10th Cir. 2005). The Tenth Circuit has channeled authority and recognized that this analysis can be satisfied in cases where medical care is delayed in increments as small as **fifteen minutes** (Lewis v. Wallenstein, 769 F.2d 1173, 1183 (7th Cir. 1985)), **a "few hours"** ("Brown v. Hughes, 894 F.2d 1533, 1538 (11th Cir. 1990)), **or "several hours"** (Sealock, 218 F.3d at 1210). Id.

This is important to note because the Tenth Circuit has recognized that death is "without doubt, sufficiently serious to meet the objective component..." Mata v. Saiz, 427 F.3d 745, 752-53 (10th Cir. 2005). Furthermore, the objective prong is met in a medical-related case "if [the condition] is one that has been diagnosed by a physician as mandating

treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Sealock, 218 F.3d at 1209 (citations omitted).

For purposes of this specific argument, Plaintiff highlights the second category of liability established by the Sealock Court because in order to fulfill their constitutional duties, security staff cannot simply pass information to medical staff. As is the case here, the record is full of evidence that the medical staff either deliberately ignored Clinton and/or were not capable of evaluating and treating his condition. Indeed, the testimony and evidence from multiple security staff (namely Mary Mulanax and Christian Miles) further establishes that they knew the medical staff were not properly treating Clinton. In other words, Clinton was denied access to medical personnel capable of evaluating and treating him, and such failures lead directly to a constitutional violation per Sealock. In order to circumvent this issue, it is anticipated that Defendant may simply try to suggest to the jury that as long as security staff passed information of Clinton's condition to medical staff, they satisfied their duties. This is not the case and would be a misstatement of law.

### VI. <u>Comments or Suggestions that Treatment for Daryl Clinton Before August 10, 2019 Would not Have Saved His Life.</u>

In the event Defendant attempts argue that any further medical care regarding Clinton's spinal trauma and splenic rupture would not have saved Clinton's life, such arguments are not in accord with the evidence, particularly admissions from Defendant's own expert. Defendant's medical expert (Paul, D.O. Adler) also agrees with Plaintiff in another key item regarding causation of Clinton's death. Dr. Adler opined that it was only on August 10, 2019 (the day Clinton died), that additional medical treatment for Clinton's

spinal trauma and splenic rupture issues in his opinion **would not** have saved Clinton's life. [See Doc. 80 at Exhibit 21 (Deposition of Adler at 53:8-16; 100:8-20; 108:2-14)]. In other words, Dr. Adler could not give any cogent medical opinion that further treatment before August 10, 2019 would not have made a difference. [Id. at 106:8 – 108:1)]. See also Dr. Callaghan's opinion on this front, which even more firmly establishes the causation framework regarding Clinton's spinal injury and delay in treatment. [See Doc. 80 at Exhibit 20 (Callaghan Report)]. Similar to before, these critical admissions by Defendant's own medical expert undercut Defendant's defenses to this case and bolster not only Plaintiff's liability analysis, but the causation analysis as well. Thus, Defendant should be restrained by suggesting or arguing in any fashion that Clinton was a "lost cause" or that treatment would have been futile.

### VII.    General Inflammatory and Irrelevant Suggestions

This Court should bar Defendant from making a host of inflammatory and irrelevant comments that could improperly frame or taint this case. These comments and arguments include, but are not limited to the following:

A. Critiques of the Plaintiffs' bar generally, such as arguments regarding "excessive" or "runaway" verdicts.

B. Arguments or testimony of "over-crowded" courtrooms, or any effort by Defendant to suggest that the instant case is one that causes backlogs or over-crowding of the court system.

C. Arguments that Plaintiff has asked for a greater amount of money than Plaintiff actually expects to be awarded, or that any award to the Plaintiff would amount to

winning the lottery, a welfare program, a "handout", a "get-rich-quick" scheme, or that Defendant's counsel is shocked or surprised by the damages requested.

D.  Arguments or testimony regarding Plaintiff's counsels' compensation.

E.  Arguments or testimony that taxpayers, insurance companies, insurance customers, financial institutions, and/or customers of financial institutions would "foot the bill", be negatively impacted by, or otherwise suffer from a verdict rendered in Plaintiff's favor.

F.  References to Clinton as a drug dealer, drug addict, druggie, or similar remarks.


## CONCLUSION

For the reasons stated herein, Plaintiff Equlla Brothers respectfully requests that this Court grant the Motions in Limine contained herein.


Respectfully Submitted,


/s/ Geoffrey A. Tabor
Woodrow K. Glass, OBA #15690
Geoffrey A. Tabor, OBA#32880
**WARD & GLASS, LLP**
1601 36th Ave NW
Norman, Oklahoma 73072
woody@wardglasslaw.com
geoffrey@wardglasslaw.com
405-360-9700
405-360-7902 (fax)

-and-

Beau Williams
Beau Williams Law Office
4901 Richmond Sq.
Oklahoma City, Oklahoma 73118
beauwilliamsatty@gmail.com
ATTORNEYS FOR PLAINTIFF

JURY TRIAL DEMANDED
ATTORNEY LIEN CLAIMED

## <u>CERTIFICATE OF SERVICE</u>

      I certify that on the above file-stamped date, a true and correct copy of this document was disseminated to the following ECF registrants of record:

Aaron Etherington
Rodney J. Heggy
Carri A. Remillard
Assistant District Attorneys
320 Robert S. Kerr, Suite 505
Oklahoma City, OK  73102
Telephone: (405) 713-1600
Facsimile: (405) 235-1567
aaron.etherington@oklahomacounty.org
rod.heggy@oklahomacounty.org
carri.remillard@oklahomacounty.org
ATTORNEYS FOR DEFENDANT OKLAHOMA COUNTY SHERIFF

/s/ Geoffrey A. Tabor