# EXHIBIT 6 APPENDIX: SUMMARY OF OSDH VIOLATIONS

1. <u>October 16, 2008</u>: Insufficient staffing of detention officers on 12th floor where prisoners were in cells.

2. <u>March 11, 2009</u>: Insufficient staffing of detention officers on 8th floor where prisoners were in cells.

3. <u>October 5, 2009</u>: Insufficient staffing of detention officers on 12th floor where prisoners were in cells.

4. <u>September 17, 2015</u>: OSDH substantiated an inmate complaint and violation of state regulations requiring follow-up treatment with a physician within 48 hours after a valid request is made or more immediate action is dictated by the severity of the current situation. OSDH found that OCDC staff ignored an inmate who was sick with active vomiting and diarrhea who required medical attention.

5. <u>September 13, 2016</u>: OCDC security staff violated policies regarding inmate monitoring by conducting sight checks in which they did not properly look inside the cells. Specifically, **an inmate suffering a medical emergency who was unable to move from her bed on the 13th floor due to her condition was not properly observed by security staff**. The inmate was taken to St. Anthony's Hospital where she was pronounced dead. OSDH directly cited security staff's deficiencies in failing to fully observe the inmate who was suffering from her medical emergency.

6. <u>November 7, 2017</u>: OCDC failed to have enough jailers to supervise inmates. The OSDH found inmates left unattended in their cells and hallways.

7. <u>May 6, 2018</u>: Security staff failed to conduct proper sight checks and monitor inmate who died in cell. Inmate was found unresponsive and was declared dead at St. Anthony's Hospital.

8. <u>June 21, 2018</u>: OCDC failed to provide sufficient technical or physical means to supervise the activities of inmates.

9. <u>August 29, 2018</u>: Security staff failed to conduct proper sight checks and monitor inmate who died in cell on the 13th floor of OCDC.

10. <u>June 5, 2019</u>: Improper site checks relating to an inmate death.



# NOTICE OF VIOLATION

**JAIL:** Oklahoma County Jail

**LOCATION:** 201 N. Shartel
Oklahoma City, OK 73102

**INSPECTION DATE:** October 5, 2009

| LETTER DATED | 60-DAY SUSP. | POS SUSPENSE | CERTIFIED# |
|---|---|---|---|
| October 14, 2009 | December 14, 2009 | October 30, 2009 | 7008 1830 0003 7847 5050 |

| NO. | STANDARD | SPECIFIC DEFICIENCY | PLAN OF ACTION | COMPLETION DATE |
|---|---|---|---|---|
| 1. | OAC 310:670 5-3 (d) | FACILITY DOES NOT MEET OKLAHOMA JAIL STANDARDS AS EVIDENCED BY:<br><br>**(d)   There shall be sufficient staff to perform all assigned functions relating to security, custody and supervision of prisoners.  Staff assignments shall provide for backup assistance for all employees entering locations where prisoners are confined.**<br><br>This standard was not met because 12 Adam and 12 David pods had no detention officer in the tower and there were prisoners in the cells. | The Oklahoma County Detention Center complies with All applicable standards due to:<br><br>The 12 Delta Unit was staffed with 2 pod officers assigned to the 12 B and 12C pods and 2 rovers assigned to the Unit for floor supervision. The 12 A Pod inmates are classified as medium custody which requires 1 hour sight checks and in 12D pod house houses Administrative Segregation custody inmates and require 30 minute sight checks. The pods are equipped with cameras and an intercom system. Sight checks are preformed as designated.  When dayroom recreation is performed, a pod officer is also posted in the pod for supervision. | October 16, 2008 |

RECEIVED

NOV 0 4 2009

Jail Inspection Program

Estate of Clinton v OCSO
OCSO - 09724

# NOTICE OF VIOLATION

JAIL:  Oklahoma County Jail

LOCATION:  201 N. Shartel
Oklahoma City, OK 73102

INSPECTION DATE:  March 11, 2009

| LETTER DATED | 60-DAY SUSP. | POC SUSPENSE | CERTIFIED # |
|---|---|---|---|
| March 20, 2009 | June 19, 2009 | April 9, 2009 | 7007 2680 0000 7022 1080 |

| NO. | STANDARD | SPECIFIC DEFICIENCY | PLAN OF CORRECTION | COMPLETION DATE |
|---|---|---|---|---|
| 1 | OAC: 310:670 5-3(d) | **FACILITY DOES NOT MEET OKLAHOMA JAIL STANDARDS AS EVIDENCED BY:** **(d)    There shall be sufficient staff to perform all assigned functions relating to security, custody and supervision of prisoners.  Staff assignments shall provide for backup assistance for all employees entering locations where prisoners are confined.** This standard was not met because 8 C and D pod had no detention officer in the tower or on the floor, even though there are prisoners in this area, therefore, no backup. | | |
| 2 | 5-6(1) | **The administrator shall develop and implement policies and procedures for the safety and maintenance of sanitation throughout the facility.  These shall include at least the following:** **(1)    The facility shall comply with state and local sanitation and health codes, as well as the Life Safety code.** This standard was not met because gnats were flying around the drain hole and in the day room area of 8 C pod. | | |
| 3 | 5-6(3) | **The administrator shall develop and implement policies and procedures for the safety and maintenance of sanitation** | | |

Estate of Clinton v OCSO
OCSO - 09703

# NOTICE OF VIOLATION

**JAIL:** Oklahoma County Jail

**LOCATION:** 201 N. Shartel
Oklahoma City, OK 73102

**INSPECTION DATE:** October 5, 2009

| NO. | STANDARD | LETTER DATED October 14, 2009 | 60-DAY SUSP. December 14, 2009 | POC SUSPENSE October 30, 2009 | CERTIFIED # 7008 1830 0003 7847 5050 | |
|-----|----------|-------------------------------|-------------------------------|-------------------------------|--------------------------------------|---|
| | | **SPECIFIC DEFICIENCY** | | **PLAN OF CORRECTION** | | **COMPLETION DATE** |
| 1 | OAC: 310:670 5-3(d) | **FACILITY DOES NOT MEET OKLAHOMA JAIL STANDARDS AS EVIDENCED BY:** **(d)** There shall be sufficient staff to perform all assigned functions relating to security, custody and supervision of prisoners. Staff assignments shall provide for backup assistance for all employees entering locations where prisoners are confined.<br><br>This standard was not met because 12 Adam and 12 Daniel pods had no detention officer in the tower and there were prisoners in the cells. | | | | |
| 2 | 5-6(4) | **The administrator shall develop and implement policies and procedures for the safety and maintenance of sanitation throughout the facility. These shall include at least the following:**<br>**(4)** Prisoners shall be provided with cleaning materials daily to clean showers, washbasins and toilets.<br><br>This standard was not met because 4 David pod cleaning log is dated 5-26?? and nothing after. 6 Baker pod last log in for cleaning was 3-20-09. | | | | |

Estate of Clinton v OCSO
OCSO - 09699

OKLAHOMA STATE DEPARTMENT OF HEALTH
PROTECTIVE HEALTH SERVICES
JAIL INSPECTION DIVISION
COMPLAINT INVESTIGATION REPORT C-2015-103

DATE OF INVESTIGATION:         SEPTEMBER 17, 2015

FACILITY:         OKLAHOMA COUNTY

## NATURE OF COMPLAINT

1. Inmate #1 has been incarcerated for a week and has not had a shower or change of clothes.
2. Inmates are not able to use toilet because no toilet paper is provided.
3. Alleges Inmate #1 is sick with active vomiting and diarrhea that is being ignored.
4. Inmate #1 is not able to use his inhaler.
5. No mats or bedding to sleep on. Inmates are sleeping on floor.

On September 9, 2015, a complaint(s) was received regarding the Oklahoma County Jail. I arrived at the facility on September 17, 2015, to conduct an investigation of the complaint(s) pursuant to Title 74 of the Oklahoma Statutes, Section 192, and Title 310 of the Oklahoma Administrative Code, Chapter 670, *Jail Standards.* The findings of the inspection are as follows:

**COMPLAINT #1:** Inmate #1 has been incarcerated for a week and has not had a shower or change of clothes.

## OAC 310:670-5-6-(9) & OAC 310:670-5-6(16)

............

**(9) A prisoner shall be given an opportunity to receive a complete change of clothing at least one (1) time each week.**

**(16)    Sufficient showers shall be provided in housing units to provide prisoners the opportunity to bathe at least three (3) times each week.**

**FINDING:** Inmate #1 was held in a pod where inmates were supposed be given one (1) hour of recreation (showers, commissary, phone calls, etc) daily. Due to the shortage of staff, inmates were not always allowed the opportunity to receive the one (1) hour of recreation daily. I spoke to Inmates #1, #2, and #3 at the time of my investigation and they all three stated that they are

not receiving the opportunity to receive showers and that most of the time they have to do the best that they can and wash themselves in the sink. Detention Officer #1 stated that the facility does not always have enough staff to get everyone out for showers and that the facility staff does the best that they can. The facility has a crew, (DST), who goes around the facility and offer a change of clothes, toilet paper, etc., to inmates. The inmates that I spoke with stated that they had not been offered a change of clothing.

**COMPLAINT SUBSTANTIATED:** Due to the shortage of staff, Inmates do not always receive the opportunity to take showers. Detention Officer #1 stated that the DST crew goes through the facility and offers a clean change of clothing weekly but the inmates that I spoke with stated that they had not been offered a change of clothing.

**COMPLAINT #2:** Inmates are not able to use toilet because no toilet paper is provided.

**OAC 310:670-5-6(6)**
............
**(6) Upon admission or after commitment by the court, each prisoner shall be issued personal hygiene items to include soap, towel, toilet paper, toothbrush and toothpaste.**

**FINDING:** I spoke with Detention Officer #1 who stated that toilet paper is handed out by DST on Tuesdays and if inmates request additional toilet paper, they may or may not receive additional toilet paper depending on if the Detention Officer on duty is busy or not.

**COMPLAINT SUBSTANTIATED:** Toilet paper is not always given upon request, it depends on how busy the Detention Officer is.

**COMPLAINT #3:** Alleges Inmate #1 is sick with active vomiting and diarrhea that is being ignored.

**OAC 310:670-5-8(7)**
............
**(7) An appointment shall be made with a physician or other licensed medical personnel within forty-eight (48) hours of a valid written request unless more immediate action is dictated by the severity of the current situation.**

**FINDING:** The medical request to staff is on a kiosk machine in the dayroom and can only be accessed when inmates are given recreation time. Due to the fact that inmates are not always

given the opportunity to receive recreation, Inmate #1 has been unable to submit a request to staff for medical attention.

**COMPLAINT SUBSTANTIATED:** Inmates can only access the medical request form using the kiosk that is in the dayroom to use during recreation time. Inmates do not always receive recreation time due to the shortage of staff.

**COMPLAINT #4:** Inmate #1 is not able to use his inhaler.

**OAC 310:670-5-8(2)(A)**

............

(A) **Medications in the possession of the prisoner at the time of the booking, whether prescription or over-the-counter shall be logged, counted and secured. Prescription medications shall be provided to the prisoner as directed by a physician or designated medical authority. The prisoner shall be observed to ensure the prisoner takes the medication. Neither prescription nor over-the-counter medications shall be kept by a prisoner in a cell with the exception of prescribed nitroglycerin tablets and prescription inhalers. Over-the-counter medication shall not be administered without a physician's approval unless using prepacked medications.**

**FINDING:** I spoke with Inmate #1 who stated that when the nurses bring the medication cart by in the mornings, he is able to use his inhaler, but that is the only time he is given the inhaler. Inmate #1 is not allowed to keep his inhaler with him in his cell.

**COMPLAINT SUBSTANTIATED:** Inmate #1 is only allowed to use his inhaler in the mornings when medications are given out. Inmate #1 is not allowed to keep his inhaler with him.

**COMPLAINT 5:** No mats or bedding to sleep on. Inmates are sleeping on floor.

**OAC 310:670-5-6(7)(A)(B)**

..........

(A) **An approved mattress with a cleanable surface; and**
(B) **Enough clean blankets to provide comfort under the existing weather conditions.**

**FINDING:** I spoke with Inmate #3 and he stated that he had gone three (3) days without a mat or bedding. During my investigation, Inmate #3 did have a mat. I went with Detention Officer #1 to the storage area and there were no extra mats available for any additional inmates.

**COMPLAINT SUBSTANTIATED:** The facility does not have an adequate supply of mattresses for inmates. Inmate #3 went three days before receiving a mattress and at the time of my investigation, there were no mattresses in storage for any potential incoming inmates.

**DISPOSITION:** A follow-up will be conducted after sixty (60) days.

**CINDY RICE, INVESTIGATOR**

OKLAHOMA STATE DEPARTMENT OF HEALTH
JAIL INSPECTION DIVISION
LIST OF DEFICIENCIES AND PROPOSALS FOR SOLUTION



Protective
Health Services

Oklahoma State
Department of Health

| JAIL: **Oklahoma County Jail** | **INSPECTION DATE:** | **September 13, 2016** |
|---|---|---|

| **REPORT DATE** **January 26, 2017** | **60-DAY CORRECTION DATE** 60 Days from Notice of Delivery | **CERTIFIED MAIL RECEIPT#** **7015 1520 0001 8887 8825** |
|---|---|---|

| OAC: 310:670 | STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY IDENTIFYING INFORMATION) | PROPOSALS FOR SOLUTION [74 O.S. § 193(B)(1)] |
|---|---|---|
| | **INITIAL COMMENTS** The Oklahoma State Department of Health conducted a Death investigation (D-2016-011) on 09/13/16. Based on the violations cited at 5-2(3) the jail is not in substantial compliance. The following deficient practice was identified: | |
| 5-2(3) | **SECURITY AND CONTROL** **The facility administrator shall develop and implement written policies and procedures for the safety, security and control of staff, prisoners and visitors. Policies and procedures shall address at least the following:** **..............................** **(3) There shall be at least one (1) visual sight check every hour which shall include all areas of each cell, and such sight checks shall be documented.** This Rule was not met as evidenced by: Based on record review, it was determined the facility failed to follow Oklahoma County Detention Center Policy 4610.02, *Inmate Dayroom Activity and Camera Monitoring Plan*, which states "The officer in the dayroom shall conduct sight checks and observe each inmate to detect flesh and movement." Detention Officers conducted multiple sight checks in which they did not properly look inside the cells. | Pursuant to Title 74, Section 193(B)(1), the Department proposes the following solution: It is recommended that the jail administrator do the following : 1) Conduct staff interviews to assess why the policy was not followed. 2) Ensure the policy reflects the current expected practice and revise as needed. 3) If the policy is revised or if the assessment determines staff knowledge of the policy is incomplete, conduct training of jail staff on the policy. 4) Review and adopt further corrective actions as needed based on observations and interviews. |

**SENDER:** *COMPLETE THIS SECTION*

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Oklahoma County Jail
201 N Shartel
Oklahoma City OK 73102

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
9590 9402 2172 6193 9155 25

2. Article Number *(Transfer from service label)*
7015 1520 0001 8887 8825

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature
X
☐ Agent
☐ Addressee

B. Received by *(Printed Name)*

C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:   ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Mail
☐ Mail Restricted Delivery
   (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053          Domestic Return Receipt



Protective
Health Services
Oklahoma State
Department of Health

---

## INVESTIGATION REPORT D-2016-011

Date of Investigation:    **SEPTEMBER 13, 2016**

Facility:    **OKLAHOMA COUNTY JAIL**

### INCIDENT REPORT OBSERVATIONS:

Type of Incident:    Death

Date of Occurrence:    April 8, 2016

Date Reported:    April 8, 2016

Reporting Party:    Major Jack Herron

**Incident Description:** Inmates being let out for recreation. Inmate #1 appeared to be asleep. Cellmates did not suspect anything. Staff tried to wake and found her to be non-responsive.

On September 13, 2016, an investigation pursuant to Title 74 of the Oklahoma Statutes, Section 192, and Title 310 of the Oklahoma Administrative Code, Chapter 670, *Jail Standards* was conducted. The findings of the investigation are as follows:

### FACTS DETERMINED BY THE INVESTIGATION: Investigative Report on Facility Case #2016-005 shows Inmate #1 was booked into jail on Saturday, March 12, 2016, on charges of Larceny. Inmate #1 was medically screened on March 13, 2016, and placed on mental health observation due to statements made during medical screening. According to the Investigative Report, Inmate #1 did not appear to be suicidal.

During Inmate #1's incarceration, she was only given Ibuprofen and was not on any other medications according to facility medical records, noted in the investigation report. According to the investigative report, Inmate #1 was housed in cell 13A08 which is housing for mental health. Inmate #1 shared a cell with two (2) other inmates. During the Investigation Division's internal investigation, it was discovered that on April 3, 2016, between 2100-2211 hours, several phone

calls were made from 13A-08 to the medical emergency line with complaints of extreme pain and head hurting. During these phone calls, the caller identified herself as Inmate #1. Again on April 7, 2016, several phone calls were made from 13A-08 to the medical emergency line at approximately 2122 hours, 2123 hours and 2125 hours. During this series of calls, the caller stated that her cellmate had not received her mental health medications. In the investigation report, the investigator states that the caller is believed to be Inmate #1.

According to the Oklahoma County Investigations Division Report, case ID 2016-005, on Friday, April 8, 2016, at approximately 0834 hours, Detention Officer #1 opened the cell door to 13A08 to allow the inmates recreation time. Inmate #2 and Inmate #3 exited the cell and Inmate #1 remained on her bed, covered from feet to shoulders with her eyes closed. According to the Investigation Division report, the last proof of life of Inmate #1 was on April, 7, 2016, at approximately 2216 hours, when the cell door was opened by Detention Officer #3 to give Inmate #1 a PM snack.

According to the report, upon their review of video surveillance from Friday, April 8, 2016, at approximately 0320 hours, Detention Officer #4 opened the cell door of 13A-08 for Inmate #4 to pass out breakfast trays. Inmate #4 entered the cell with three (3) trays and came out empty handed. Video surveillance shows that at approximately 0334 hours, Detention Officer #4 opened cell 13A-08 to collect trash. According to the surveillance video, sight checks were conducted as scheduled, however, the cell door was not opened again until approximately 0743 hours when inmates were given recreation time.

Detention Officer #1 asked Inmate #2 if Inmate #1 was ok. Inmate #2 stated that Inmate #1 had been suffering from a migraine the night before. Detention Officer #1 asked Inmate #2 to pat Inmate #1 on the leg to see if she would respond. When Inmate #2 patted Inmate #1 on the leg, there was no response. Inmate #2 exited the cell and went out for recreation.

Detention Officer #1 summoned Detention Officer #2 and together they entered the cell and tried to get a response using verbal commands and physical contact. When Inmate #1 did not respond, Detention Officer #1 called for medical assistance.

Medical Assistance arrived on scene at approximately 0838 hours, placed Inmate #1 on the floor and began life saving measures. At approximately 0853 hours, Oklahoma City Fire Department and EMSA arrived and took over life saving measures. At approximately 0909 hours, EMSA left the facility transporting Inmate #1 to St. Anthony Hospital where she was pronounced dead at approximately 0934 hours.

According to the same investigation division report, OSBI was contacted at 0906 hours.

The body was released to The Oklahoma Medical Examiner's Office. Autopsy report #1601728 shows probable cause of death to be **Acute Intracranial Hemorrhage** due to **Ruptured Berry Aneurysm.**

**DEFICIENCY #1:** Officers conducted multiple sight checks in which they did not properly look inside the cells.

**OAC 310:670-5-2(3) Security and control**
**The facility administrator shall develop and implement written policies and procedures for the safety, security and control of staff, prisoners and visitors. Policies and procedures shall address at least the following:............**
**(3) There shall be at least one (1) visual sight check every hour which shall include all areas of each cell, and such sight checks shall be documented.**

Based on record review, it was determined the facility failed to follow Oklahoma County Detention Center Policy 4610.02, *Inmate Dayroom Activity and Camera Monitoring Plan,* which states "The officer in the dayroom shall conduct sight checks and observe each inmate to detect flesh and movement." Detention Officers conducted multiple sight checks in which they did not properly look inside the cells.

**DISPOSITION**: A report of deficiency will be issued pursuant to Title 74, Section 193(B).



Health Resources
Development Service

Oklahoma State
Department of Health

Jail Inspection Division
Oklahoma State Department of Health
1000 NE 10th Street · Oklahoma City, OK 73117
Telephone (405) 271-3912 · Fax (405) 271-5304
E-mail Jails@health.ok.gov
http://jails.health.ok.gov

# JAIL INSPECTION REPORT

DATE: 11-7-2017

Type of Facility: (Check One)  COUNTY [✔]  CITY [ ]  LOCK-UP [ ]

Facility: Oklahoma County    Mailing Address: 201 S hartel

City: Oklahoma City    County: Oklahoma    Zip: 73102

Sheriff/Chief: PD Taylor    Jail Administrator: Jack Herron

Jail Administrator's Phone: 405-713-1934    Jail Administrator E-Mail: Jherron @ Oklahoma County.org

Jail Fax #: 405-713-1987

Medical Authority: Armor Correctional Health Car.

Staffing: Day Shift(M) 127  (F) 157  Evening(M) 16  (F) 23  Night(M) 52  (F) 50

Total Male Beds: 1620  Female Beds: 393  Juvenile Beds: 18  Special Cells: 354

Population Today: 1834  Rated Capacity: 2890 Avg. Daily Population: 1,850  Men 1500  Women 350

Sentenced:  Male 209  Fem 29  Juv Male 0  Juv Fem 0  Total 238

Unsentenced: Male 1,297  Fem 298  Juv Male 16  Juv Fem 0  Total 1,611

DOC J&S: 238    Menu Approved by Licensed Dietitian (Long Term Jail Only)  Yes ✔  No ____

Food Prepared By: Aramark Contract    Approved Form for Book In  Yes ✔  No ____

Inmates with mental health issues
appropriately segregated  Yes [ ] No [ ]

Facility has written policy regarding inmates
with mental health problems  Yes [✔] No [ ]

## DEFICIENCIES: Title 310 Chapter 670

Facility in substantial compliance  Yes [ ]    No [✔]

Deficiencies noted during inspection  Yes [✔]    Statement of Deficiencies to follow

I ACKNOWLEDGE REVIEW OF THIS REPORT
AND SWEAR THAT THE INFORMATION GIVEN
BY ME IS TRUE TO THE BEST OF MY KNOWLEDGE.

_Jack Herron  Mgor_
Signature of Jail Representative

I CERTIFY THAT THIS INSPECTION COVERED
ALL APPLICABLE STANDARDS.

_Alicia Dickerson_
Signature of Inspector/Investigator



Oklahoma State Department of Health
Creating a State of Health

November 30, 2017

**CERTIFIED MAIL**
**7015 1520 0001 8887 9273**

Jail Administrator
Oklahoma County Jail
201 N Shartel
Oklahoma City OK 73102

Dear Sheriff Taylor:

A recent inspection was conducted at your facility by a member of the Jail Inspection Division. The results of the findings are attached.

Sincerely,

Scott Chisholm

Scott Chisholm
Program Manager
Jail Inspection Division

c    Oklahoma County Commissioners
     Tina Johnson, Deputy Commissioner, Community & Family Health Services
     Oklahoma County Health Administrator

Encl

Board of Health

| | | | | |
|---|---|---|---|---|
| Preston L. Doerflinger | Martha A Burger, MBA | Cris Hart-Wolfe | Robert S Stewart, MD | 1000 NE 10TH Street |
| Interim Commissioner of Health | *President* | *Vice President* | *Secretary - Treasurer* | Oklahoma City, OK 73117-1207 |
| | Jenny Alexopulos, DO | Charles W Grim, DDS, MHSA | Timothy E Starkey, MBA | www.health.ok.gov |
| | Terry R Gerard, DO | R Murali Krishna, MD | Edward A Legako, MD | *An Equal Opportunity Employer* |



OKLAHOMA STATE DEPARTMENT OF HEALTH
DETENTION FACILITY INSPECTION DIVISION
LIST OF DEFICIENCIES AND PROPOSALS FOR SOLUTION



Protective
Health Services
Oklahoma State
Department of Health

| DETENTION FACILITY: | Oklahoma County Jail | INSPECTION DATE: | November 7, 2017 |
|---|---|---|---|

| REPORT DATE<br>November 30, 2017 | 60-DAY CORRECTION DATE<br>60 Days from Notice of Delivery | CERTIFIED MAIL RECEIPT#<br>7015 1520 0001 8887 9273 |
|---|---|---|

| OAC: 310:670 | STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY IDENTIFYING INFORMATION) | PROPOSALS FOR SOLUTION [74 O.S. § 193(B)(1)] |
|---|---|---|
| | **INITIAL COMMENTS**<br><br>The Oklahoma State Department of Health conducted an annual inspection on 11/7/17. The census was 1834.<br><br>Based on the violation(s) cited below, the Detention Facility is not in substantial compliance.<br><br>The following deficient practice(s) were identified: | |
| 5-3(a)(d) | **Supervision of prisoners**<br>    **(a) The movement of prisoners from one location to another shall be controlled and supervised by staff.**<br>    **.......**<br>    **(d) There shall be sufficient staff to perform all assigned functions relating to security, custody and supervision of prisoners. Staff assignments shall provide for backup assistance for all employees entering locations where prisoners are confined.**<br><br>This Rule was not met as evidenced by:<br><br>Based on observation and interview, it was determined the facility failed to have enough jailers to supervise the activities of inmates<br><br>Findings:<br><br>1. Observation #1: Adam Pod: three inmates handcuffed to a rail standing unattended waiting to be escorted to their cell.<br><br>2. Observation #2: 10 Baker Pod: inmates left unattended and confined to their cell hollering and yelling through the bean hole.<br><br>3. Observation #3: Cleaning cart was left in hallway unattended in 2 Charlie and 2 Adam Pods. | Pursuant to Title 74, Section 193(B)(1), the Department proposes the following solution:<br><br>It is recommended that the Detention Facility administrator do the following :<br><br>1) Conduct meetings with Sheriff, County Commissioners, etc. to find a solution to hire more Detention Facility staff.<br><br>2) Ensure the policy reflects the current expected practice and revise as needed.<br><br>3) If the policy is revised or if the assessment determines not enough staff, conduct training of Detention Facility staff on the policy of Staffing.<br><br>4) Review and adopt further corrective actions as needed to have enough Detention Officers for all areas of the jail. |

**OKLAHOMA STATE DEPARTMENT OF HEALTH
PROTECTIVE HEALTH SERVICES
JAIL INSPECTION DIVISION**



**INVESTIGATION REPORT D-2018-008**

**Date of Investigation:**                          **November 25, 2019**

**Facility:**                                                **Oklahoma County Jail**

<u>**INCIDENT REPORT OBSERVATIONS**</u>:

**Type of Incident:**                               **Death**

**Date of Occurrence:**                          **May 6, 2018**

**Date Reported:**                                  **May 7, 2018**

**Reporting Party:**                                **Jack Herron**

**Incident Description:** The facility's incident report described the incident as follows:

On 5/6/18 at 2031 hours Inmate was found unresponsive. Staff immediately started CPR and called from EMSA. EMSA continued life saving measures and transported Inmate to St. Anthony's Hospital. He was pronounced dead at 2130 hours.

On November 25, 2019 an investigation pursuant to Title 74 of the Oklahoma Statutes, Section 192, and Title 310 of the Oklahoma Administrative Code, Chapter 670, *Jail Standards* was conducted. The findings of the investigation are as follows:

<u>**FACTS DETERMINED BY THE INVESTIGATION:**</u> During this investigation a review of the ME's report and an internal investigation report submitted by the detention facility was conducted. In the internal investigation report it is document that detention facility staff did not complete hourly sight checks and inmate counts at the time of this incident. The failure to conduct sight checks and counts violates Oklahoma state standards for city and county detention facilities as well as the detention facilities policy and procedure.

**THIS ALLEGATION WAS:**
☐ **Substantiated** ☐ **Unsubstantiated** ☒ **Substantiated But Previously Corrected**

**DISPOSITION**: A report of deficiency will NOT be issued due to the belatedness of this investigation and the subsequent recent inspection denoting no deficiencies have been cited related to the violations identified.



Protective
Health Services

Oklahoma State
Department of Health

| DETENTION FACILITY: | Oklahoma County Jail | INSPECTION DATE: | June 21, 2018 |
|---|---|---|---|

| REPORT DATE<br>September 4, 2018 | 60-DAY CORRECTION DATE<br>60 Days from Notice of Delivery | CERTIFIED MAIL RECEIPT#<br>7017 2680 0000 5350 9508 |
|---|---|---|

| OAC:<br>310:670 | STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY IDENTIFYING INFORMATION) | PROPOSALS FOR SOLUTION<br>[74 O.S. § 193(B)(1)] |
|---|---|---|
| | **INITIAL COMMENTS**<br><br>The Oklahoma State Department of Health conducted investigation of complaints (C-2017-127, C-2017-157, C-2018-159, C-2018-001, C-2018-013, C-2018-017, C-2018-037, C-2018-058, C-2018-061, and C-2018-063) on June 21, 2018.<br><br>Based on the violation(s) cited below, the Detention Facility is not in substantial compliance.<br><br>The following deficient practice(s) were identified: | |
| 5-3(c) &<br>(d) | **SUPERVISION OF PRISONERS**<br>.......<br>**(c) Jailer posts shall be located and staffed to monitor all prisoner activity either physically or electronically and close enough to the living areas to respond immediately to calls for assistance, and respond to emergency situations. A jailer shall be on duty at all times at each location where prisoners are confined or the observation shall be conducted by closed circuit TV. The location shall be equipped with an intercommunication system that terminates in a location that is staffed twenty-four (24) hours a day and is capable of providing an emergency response.**<br>**(d) There shall be sufficient staff to perform all assigned functions relating to security, custody and supervision of prisoners. Staff assignments shall provide for backup assistance for all employees entering locations where prisoners are confined.**<br><br>This Rule was not met as evidenced by:<br><br>Based on observation and interview, it was determined the facility failed to provide sufficient technical or physical means to supervise the activities of inmates.<br><br>Findings:<br><br>1. During the investigation it was observed that inmates were handcuffed to the rail in the A+B hallway and left standing there without supervision while waiting to be seen by medical.<br><br>2. The floor Sergeant was asked if the inmates are supervised or monitored via surveillance camera. The Sergeant stated that the inmates were kept in the area until retrieved by medical staff for their appointment, they were not supervised and there was not a surveillance camera for the area.<br><br>3. An intercom system was not present in the area. | Pursuant to Title 74, Section 193(B)(1), the Department proposes the following solution:<br><br>It is recommended that the Detention Facility administrator do the following:<br><br>1) Review the requirements in OAC 310:670-5-3 for supervision of inmates.<br><br>2) Review the practice for transfer of inmates to the medical unit and their supervision while waiting to be seen.<br><br>3) Assess what, if any, physical or technical supervision can be provided at the A+B hallway that meets the requirement.<br><br>4) Develop and implement the solution.<br><br>5) Incorporate the new practice in the policy for transport and supervision of inmates during medical visits.<br><br>6) Conduct training of Detention Facility staff on the policy.<br><br>7) Establish an interval to monitor the new practice to ensure it is being followed. |

| OAC: 310:670 | STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY IDENTIFYING INFORMATION) | PROPOSALS FOR SOLUTION [74 O.S. § 193(B)(1)] |
|---|---|---|
| | 4. The inmates were not in audible range of staff. | |
| 5-6(19) | **SAFETY, SANITARY AND HYGIENE STANDARDS** **The administrator shall develop and implement policies and procedures for the safety and maintenance of sanitation throughout the facility. These shall include at least the following:** **.......** **(19) Any condition conducive to harboring or breeding insects, rodents or other vermin shall be eliminated immediately. Licensed pest control professionals shall be contracted to perform pest control on a scheduled basis specified in the facility policy and procedure.** This Rule was not met as evidenced by: Based on observation and interview it was determined the facility failed to implement policies to avoid gnats and bed bugs in the facility. Findings: 1. During observation in C pod, gnats were swarming over trash cans and in the showers. 2. The floor Sergeant was interviewed and asked if there were any cases of bed bugs reported. The Sergeant stated that there was a confirmed infestation of bed bugs days prior to investigation in cell 13A07. | Pursuant to Title 74, Section 193(B)(1), the Department proposes the following solution: 1) Review the requirements in OAC 310:670-5-6(19) for pest control. 2) Ensure the policy reflects the current expected practice and revise as needed. 3) If the policy is revised conduct training of Detention Facility staff on the revised policy. 4) Monitor for compliance with the policy and review and adopt further corrective actions as needed. |
| 5-8(11) | **MEDICAL CARE AND HEALTH SERVICES – DOCUMENTATION OF MEDICATIONS** **Adequate medical care shall be provided in a facility. The administrator shall develop and implement written policies and procedures for complete emergency medical and health care services. Policies and procedures shall include at least the following:** **.......** **(11) The administration of medications, and the date, time and place of medical encounters shall be documented.** This Rule was not met as evidenced by: Based on record review it was determined the facility failed to implement a policy to ensure documentation of the administration of medications. Findings: 1. Record review of an inmate's medical file showed the inmate was prescribed certain medications. In September 2017, five days on the medication log do not show medication as being received or refused. | Pursuant to Title 74, Section 193(B)(1), the Department proposes the following solution: 1) Review the requirements in rule. 2) Identify or develop the required policy. 3) Ensure the policy reflects the expected practice and revise as needed. 4) Conduct training of Detention Facility staff on the policy. 5) Conduct periodic monitoring of the correction for compliance, conduct further training and/or review and revise the policy and adopt further corrective actions as needed. |

**OKLAHOMA STATE DEPARTMENT OF HEALTH**
**PROTECTIVE HEALTH SERVICES**
**JAIL INSPECTION DIVISION**



**INVESTIGATION REPORT D-2018-017**

| | |
|---|---|
| **Date of Investigation:** | **November 25, 2019** |
| **Facility:** | **Oklahoma County Jail** |
| <u>**INCIDENT REPORT OBSERVATIONS**</u>: | |
| **Type of Incident:** | **Death** |
| **Date of Occurrence:** | **August 29, 2018** |
| **Date Reported:** | **August 31, 2018** |
| **Reporting Party:** | **Captain Gene Bradley** |

**Incident Description:** The facility's incident report described the incident as follows:

SDO Davis was in 13d pod conducting medication pass at which time she went to cell 12 to wake Inmate #1 for his medication. SDO Davis attempted numerous time to awaken Inmate3 #1 when she discovered he was non-responsive. SDO Davis called for medical and assisted in moving cellmates out of the cell. Medical arrived and began CPR. Nurses and security staff continued CPR and placed AED on Inmate #1 until Fire arrived and took over lifesaving procedures. Lt. Qualls with Oklahoma City Fire Department pronounced time of death at 2233. Captain Henley took over the scene to await the Medical Examiner which took possession of Inmate #1 and escorted him out of the facility.

On November 25, 2019, an investigation pursuant to Title 74 of the Oklahoma Statutes, Section 192, and Title 310 of the Oklahoma Administrative Code, Chapter 670, *Jail Standards* was conducted. The findings of the investigation are as follows:

<u>**FACTS DETERMINED BY THE INVESTIGATION:**</u> During this investigation a review of the MS's Report and an internal investigation report submitted by the detention facility was conducted. In the internal investigation report it is document that detention facility staff did not complete hourly sight check and inmate county at the time of this incident. The failure to conduct sight checks and counts violates Oklahoma state standards for city and county detention facilities as well as the detention facilities policy and procedure. It is also documented that inmate #1 was placed on 23 hour medical observation in the medical pod due to an altercation. It is noted in the internal investigation report that officers did only one sight check an hour. This

violated the detention facilities policy of site checks every 30 minutes on medical all inmates under medical status. This incident was not reported in the time frame determined by state detention facility standards.

**THIS ALLEGATION WAS:**
☐ **Substantiated** ☐ **Unsubstantiated** ☒ **Substantiated But Previously Corrected**

**DISPOSITION**: A report of deficiency will NOT be issued due to the belatedness of this investigation and the subsequent recent inspection denoting no deficiencies have been cited related to the violations identified.

OKLAHOMA STATE DEPARTMENT OF HEALTH
DETENTION FACILITY INSPECTION DIVISION
LIST OF DEFICIENCIES AND PROPOSALS FOR SOLUTION



Protective
Health Services

Oklahoma State
Department of Health

| DETENTION FACILITY: | Oklahoma County Detention Facility | INSPECTION DATE: | June 5, 2019 |
|---|---|---|---|

| REPORT DATE August 15, 2019 | 60-DAY CORRECTION DATE 60 Days from Notice of Delivery | CERTIFIED MAIL RECEIPT# 7018 3090 0002 2387 6767 |
|---|---|---|

| OAC: 310:670 | STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY IDENTIFYING INFORMATION) | PROPOSALS FOR SOLUTION [74 O.S. § 193(B)(1)] |
|---|---|---|
| | **INITIAL COMMENTS** <br><br> The Oklahoma State Department of Health conducted an investigation of deaths D-2019-007 and D-2019-008, and complaints C-2019-036, C-2019-037 and C-2019-041. <br><br> Based on the violation(s) cited below, the Detention Facility is not in substantial compliance. <br><br> The following deficient practice(s) were identified: | |
| 5-6(19) | **Safety, Sanitary And Hygiene Standards** <br>    **The administrator shall develop and implement policies and procedures for the safety and maintenance of sanitation throughout the facility. These shall include at least the following: .......** <br> **(19) Any condition conducive to harboring or breeding insects, rodents or other vermin shall be eliminated immediately. Licensed pest control professionals shall be contracted to perform pest control on a scheduled basis specified in the facility policy and procedure.** <br><br> This Rule was not met as evidenced by: <br><br> Based on observation and interview the facility failed to immediately eliminate conditions for the harboring of breeding of insects. <br><br> Findings: <br><br> 1) Observation #1: gnats throughout the facility. <br><br> 2) Interview #1 with the Captain stating that the facility is in the process of contracting a new pest control company. | Pursuant to Title 74, Section 193(B)(1), the Department proposes the following solution: <br><br> It is recommended that the detention facility administrator do the following : <br><br> 1) Conduct staff interviews to assess why the policy was not followed. <br><br> 2) Ensure the policy reflects the current expected practice and revise as needed. <br><br> 3) If the policy is revised or if the assessment determines staff knowledge of the policy is incomplete, conduct training of detention facility staff on the policy. <br><br> 4) Review and adopt further corrective actions as needed based on observations and interviews. |
| 5-11(a) (4)(C) | **Physical plant** <br> **(a)  Existing facilities.** <br> **........** <br> **(4) The housing and activity areas shall provide, at least the following:** <br> **(C) A shower with non-skid floors and with hot and cold running water, at a ratio of at least one (1) shower to twenty (20) prisoners in the housing areas.** | Pursuant to Title 74, Section 193(B)(1), the Department proposes the following solution: <br><br> It is recommended that the detention facility administrator do the following : <br><br> 1) Review the procedures for reporting and responding to maintenance needs. |

Revised: 12/7/2016  BROTHERS 908

| OAC: 310:670 | STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY IDENTIFYING INFORMATION) | PROPOSALS FOR SOLUTION [74 O.S. § 193(B)(1)] |
|---|---|---|
| | This Rule was not met as evidenced by:<br><br>During this investigation it was observed that only two (2) showers in pod 4 Baker were operational. The population of this pod at the time of investigation was 75 inmates.<br><br>Findings:<br><br>1) Observation #1: two functioning showers in 4 Baker for 75 inmates.<br><br>2) Interview #1 with the Captain stating the facility is in the process of purchasing new shower equipment. | 2) Review the actions taken to identify and report the water leaks.<br><br>3) Review the process for authorizing repairs.<br><br>4) Review the process for monitoring for completion of repairs.<br><br>5) Identify those steps in the process that were not followed and why.<br><br>6) Revise and train on maintenance procedures as needed.<br><br>7) Confirm the repair of the water leaks is scheduled and completed. |
| 5-2(3) | **Security and control**<br>**The facility administrator shall develop and implement written policies and procedures for the safety, security and control of staff, prisoners and visitors. Policies and procedures shall address at least the following:**<br>**.....**<br>**(3) There shall be at least one (1) visual sight check every hour which shall include all areas of each cell and such sight checks shall be documented.**<br><br>This Rule was not met as evidenced by:<br><br>During this investigation, a review was conducted of documents provided by the detention facility. During this review it was determined that the officer on duty at the time of inmate's death did not perform site checks hourly or perform site checks in all areas assigned. A review of interview transcripts indicates that the officer admitted to not performing these checks and falsifying the log. The internal investigation determined that the officer only completed three site checks during a twelve (12) hour period. This violated the Detention Facility Policy 4310.01.<br><br>Findings:<br><br>1) Document review of internal investigation interview transcript noting the officer admitting to not performing sight checks per policy and jail standards and also admitting to falsifying the entry log. | Pursuant to Title 74, Section 193(B)(1), the Department proposes the following solution:<br><br>It is recommended that the detention facility administrator do the following :<br><br>1) Conduct staff interviews to assess why the policy was not followed.<br><br>2) Ensure the policy reflects the current expected practice and revise as needed.<br><br>3) If the policy is revised or if the assessment determines staff knowledge of the policy is incomplete, conduct training of detention facility staff on the policy.<br><br>4) Review and adopt further corrective actions as needed based on observations and interviews. |

| OAC: 310:670 | STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY IDENTIFYING INFORMATION) | PROPOSALS FOR SOLUTION [74 O.S. § 193(B)(1)] |
|---|---|---|
| 5-6(1) | **Safety, sanitary and hygiene standards** <br>     **The administrator shall develop and implement policies and procedures for the safety and maintenance of sanitation throughout the facility. These shall include at least the following: (1) The facility shall comply with state and local sanitation and health codes, as well as the Life Safety code.** <br><br> This Rule was not met as evidenced by: <br><br> During this investigation, it was observed that there was a substance resembling mold throughout the shower area in 4 Baker. <br><br> Findings: <br><br> 1) Observation of a mold like substance throughout the shower area in 4 Baker. | Pursuant to Title 74, Section 193(B)(1), the Department proposes the following solution: <br><br> It is recommended that the Detention Facility administrator do the following : <br><br> 1) Review the procedures for reporting and responding to maintenance needs. <br><br> 2) Review the actions taken to identify and report the water leaks. <br><br> 3) Review the process for authorizing repairs. <br><br> 4) Review the process for monitoring for completion of repairs. <br><br> 5) Identify those steps in the process that were not followed and why. <br><br> 6) Revise and train on maintenance procedures as needed. <br><br> 7) Confirm the repair of the water leaks is scheduled and completed. <br><br> 8) Create a cleaning schedule. <br><br> 9) Ensure that cleaning is performed daily. |

OKLAHOMA STATE DEPARTMENT OF HEALTH
PROTECTIVE HEALTH SERVICES
JAIL INSPECTION DIVISION



Protective
Health Services
Oklahoma State
Department of Health

---

## INVESTIGATION REPORT D-2019-008

**Date of Investigation:**            **June 5, 2019**

**Facility:**            **Oklahoma County Detention Facility**

### INCIDENT REPORT OBSERVATIONS:

**Type of Incident:**            **Death**

**Date of Occurrence:**            **May 17, 2019**

**Date Reported:**            **May 17, 2019**

**Reporting Party:**            **Scott Sedbrook**

**Incident Description:** The facility's incident report described the incident as follows:

Detention Officer B Jones was feeding breakfast when she discovered Inmate was unresponsive. CPR was initiated and Fire/EMS was notified. Nursing staff and Detention Personnel performed CPR until rescue services arrived. Fire Department personnel called the time of death at 0503 am.

On June 5, 2019 an investigation pursuant to Title 74 of the Oklahoma Statutes, Section 192, and Title 310 of the Oklahoma Administrative Code, Chapter 670, *Jail Standards* was conducted. The findings of the investigation are as follows:

**FACTS DETERMINED BY THE INVESTIGATION:** During this investigation, a review was conducted of documents provided by the detention facility. During this review it was determined that the officer on duty at the time of this death, did not perform site checks hourly or perform site checks in all areas assigned. A review of interview transcripts indicated that the officer admitted to not performing these checks and falsifying the log. The internal investigation determined that the officer only completed three site checks during a twelve hour period. This violated the Detention Facility Policy 4310.01.

**Based on the investigation of this incident a violation of the Jail Standards ☒ was [☐ was not] identified.**

**DISPOSITION:** A report of deficiency will be issued pursuant to Title 74, Section 193(B).

<span style="color:red">BROTHERS 911</span>

**OKLAHOMA STATE DEPARTMENT OF HEALTH**
**PROTECTIVE HEALTH SERVICES**
**JAIL INSPECTION DIVISION**



---

## INVESTIGATION REPORT D-2019-007

**Date of Investigation:**      **June 5, 2019**

**Facility:**      **Oklahoma County Detention Facility**

## INCIDENT REPORT OBSERVATIONS:

**Type of Incident:**      **Death**

**Date of Occurrence:**      **May 2, 2019**

**Date Reported:**      **May 2, 2019**

**Reporting Party:**      **Gene Bradley**

**Incident Description:** The facility's incident report described the incident as follows:

On May 2, 2019, the Medical Examiner notified Oklahoma County Sheriff's Office Special Investigations Unit Lt Crump of the death of Inmate #1 after the suicide attempt that took place on April 23, 2019 here at the facility. This report is to notify the Division of the status change for Inmate #1 and update the original report sent to your office on 4/23/19.

On June 5, 2019, an investigation pursuant to Title 74 of the Oklahoma Statutes, Section 192, and Title 310 of the Oklahoma Administrative Code, Chapter 670, *Jail Standards* was conducted. The findings of the investigation are as follows:

**FACTS DETERMINED BY THE INVESTIGATION:** During this investigation, a document review was conducted of incident reports, entry logs, internal investigation report, and medical records that were provided by the detention facility. These documents indicate that the facility operated according to Oklahoma State Jail Standards and the detention facility's internal policy. The detention facility provided mental health care along with clergy to Inmate #1. The detention facility mental health staff had placed Inmate #1 on suicide precautions multiple times and

<span style="color:red">BROTHERS 912</span>

reevaluated the inmate before transitioning to a different level of precaution. No violations of jail standards have been observed at this time.

**Based on the investigation of this incident a violation of the Jail Standards ☐ was [☒ was not] identified.**

**DISPOSITION**: No further action required.

BROTHERS 913