UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| Equlla M. Brothers, Personal Representative of Estate of Daryl Clinton,<br><br>      Plaintiff,<br><br>v<br><br>Tommie Johnson III, Oklahoma County Sheriff, Official Capacity, Turnkey Health Clinic, LLC, and Dr. Kent King,<br><br>      Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  No. CIV-2021-418-SLP<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## OBJECTION TO PLAINTIFF'S MOTIONS IN LIMINE [ECF 91]

The Plaintiff's Motions in Limine is generally founded under the faulty premise that the deliberate indifference standard has been replaced by a medical negligence standard. The United States Supreme Court and the 10th Circuit Court of Appeals have never reduced constitutional thresholds to mere negligence standards. Likewise, proof of causation is still the Plaintiff's burden. *Sparks v Rittenhouse*, 2006 WL 158891 at 6 (10th Cir. 2006). The Plaintiff must prove that an alleged breach of a constitutional right resulted in the damages claimed. The Motions in Limine are designed to circumvent these requirements.

It should be noted that the Plaintiff's Motions in Limine do not complain about a single exhibit listed in the 73-page Pre-trial Order [ECF 89]. The Plaintiff's Motions in Limine, with one exception, do not complain about a single witness.

1

Rather, the complaint seems to be about evidence characterization in closing argument rather than about evidence or any issue to be presented by either side. This is not the purpose of motions in limine.

I.      Litigation History

The Medical Examiner's Report [ECF 74-12], which both sides will be placing in evidence [ECF 89 at 11, 20], lists the gas station at the corner of NW 23rd and Ann Arbor as the location at which Daryl Clinton ("Clinton") "became ill." ECF 74-12 at 1. The jury will need to know what happened at the gas station. The jury will see the photos of Clinton's car which can be viewed at ECF 74-1 and ECF 74-2. The jury will need to be told how that accident happened and how it ended up that Clinton was arrested by Oklahoma City police and transported to St. Anthony Hospital and from there to the jail. Clinton's statements to the arresting officers will be illuminating for the jury. It is inextricably intertwined in the events about which Plaintiff complains.

The family admitted Clinton was a drug dealer in response to the very legitimate questions about how Clinton made a living. *See*, Deposition of Dwight Clinton, March 10, 2023 at 14. (Q  Okay.  Do you know how he got the money to put gas in it?  A  Like I said, he -- I am not -- he -- he worked.  My brother wasn't the same. He also sold drugs."). In other words, Clinton's criminal history may come up in response to simple damages questions such as, "how did he get money to put gas in his car?"

As to the criminal history or litigation history of any family member, unless they brought it up it has never come up. Therefore, the Sheriff has no idea what the concerns are on that topic and objects to a "blind order." The Plaintiff should specify the precise exhibits and questions beyond permissible impeachment that Plaintiff is trying to exclude.

II. <u>Familiar with the Process</u>

A search of the record found this raised as the concluding statement in numbered paragraph 4 of the Sheriff's Motion for Summary Judgment. ECF 74 at 12. The point was that Plaintiff had been in the Oklahoma County jail previously and from that experience knew how to request medical services. The facts regarding Clinton's prior arrests was admitted. Plaintiff's Response to Motion for Summary Judgment, ECF 80 at 7. Further, nowhere has Plaintiff alleged Clinton did not know how to request medical services. Indeed, Plaintiff's allegation in this motion is that Plaintiff requested medical services often and clearly. ECF 91 at 4. The parties appear to be in agreement that Clinton knew how to request medical services.

III. <u>Treatment for Spinal Injury</u>

The parties agree that Clinton was not treated for a spinal injury. Indeed, St. Anthony Hospital, the jail medical staff, and the detention officers did not know of a spinal injury. St. Anthony Hospital and the jail medical staff thought Clinton was faking his claims about problems moving his arms. Indeed, the medical staff told the detention staff exactly that. *See*, Report of Corporal Mary Mulanax, ECF

3

74-16. Indeed, Plaintiff has admitted this is true. Plaintiff's Motion for Summary Judgment, ¶9 [ECF at 7].

The entrance of Jacob Strohl, MD into Clinton's cell on August 9, 2019 was not to treat him for a spinal injury. Everyone agrees with that. Dr. Strohl went to see if, indeed, Clinton was lying about being paralyzed for some psychiatric reason and to observe Clinton. The Plaintiff admits Clinton was visited in his cell. Plaintiff's Motion for Summary Judgment, ¶11 [ECF at 7].

Indeed, all Plaintiff can quibble about was whether Clinton was "treated by a qualified doctor for his specific ailments." *Id*. The Sheriff's claim is that a doctor qualified to observe Clinton moving his arms and whether his claim of paralysis appeared to be real or the result of some other motive or cause, in fact, saw Clinton on August 9, 2019. It is well established that the Constitution does not guarantee a prisoner the type or scope of medical treatment of his choice. *Henderson v Secretary of Corrections*, 518 F2d 694, 695 (10th Cir. 1975). Nor is the Constitution offended by mere negligence in diagnosing or providing medical care. *Estelle v Gamble*, 429 US 97, 105-06 (1976). "Deliberate indifference" is defined as knowing and disregarding an excessive risk to an inmate's health or safety. *Farmer v Brennan*, 511 U.S. 825, 827 (1994); *Strain v Regaldo*, 977 F3d 984, 990 (10th Cir. 2020), *cert. den*. 142 S.Ct. 312 (2021).

The Plaintiff's claim is that the detention officers were deliberately indifferent to something they saw that the doctor, an MD board certified in psychiatry, did not. Clearly, the evidence of Dr. Strohl's visit to Clinton's cell is relevant and admissible

on the question. The detention officers could not be deliberate or indifferent decisionmakers about symptoms, diagnoses, or treatments by deferring to an MD making those determinations.

If Plaintiff's remaining claim is that the doctor, employed by Turn Key Clinics, LLC, was deliberately indifferent, the Plaintiff's settlement with Turn Key has retired the issue. Then, the only remaining claim is whether the detention officers were deliberately indifferent by relying on the MD rather than on their 1st Aid or CPR training to reach a different conclusion. That is not a claim recognized in the 10th Circuit, as noted above.

The parties agree that Clinton was not treated for a spinal injury by the jail medical staff. The parties agree that jail medical staff repeatedly assured the detention officers Clinton was faking his paralysis claim. The parties agree an MD psychiatrist went to check. The parties agree that Dr. Strohl entered no orders for treatment or transport for a spinal injury after seeing Clinton for several minutes. If the psychiatrist concluded the paralysis was real, or if the psychiatrist suspected Clinton had an undiagnosed medical condition, the psychiatrist would have entered orders for treatment or transport. The detention officers would have no way to know which opinion of the psychiatrist was wrong, if any were, just as they had no way to know if the Registered Nurses were wrong. The Constitution is offended when someone like a detention officer knows a diagnosed condition has been left untreated or unevaluated, and does nothing. The Constitution is not offended if

5

the detention officer obtains medical services but does not have the ability to grade them.

The Motion in Limine is attempting to address an issue that does not exist *for either party*.

    IV.    <u>Not Liable for Medical Staff Action or Inaction</u>.

The Plaintiff's admission that they are, in fact, trying to impose *respondeat superior* liability on the Sheriff, and trying to gag the Sheriff at the same time, actually misses the mark altogether. The parties agree that Clinton was not treated for a spinal injury by the jail medical staff. The parties agree that jail medical staff repeatedly assured the detention officers Clinton was faking his paralysis claim. The parties agree an MD psychiatrist went to check and did not reach a different conclusion. None of that is an "empty chair" defense.

Whether jail medical staff acted with deliberate indifference was taken out of the case when Plaintiff settled with Turn Key and dismissed Turn Key and the medical director with prejudice. Because Turn Key and the medical director employed by Turn Key are no longer defendants and no specific detention officer was ever named, and because detention officers repeatedly sought medical services for Plaintiff, Plaintiff must find a way to *Monell* liability through the "unusual" theory of "systemic failure." *Lucas v Turn Key Health Clinics, LLC,* 58 F4th 1127, 1444 (10th Cir. 2023) (dismissal based on Government Tort Claims Act immunity reversed but dismissal based on "systemic failure" affirmed). Plaintiff's reliance on *Lucas* is misplaced. "The problems of the Tulsa County Jail recounted

6

in the complaint all occurred prior to Turn Key becoming the medical contractor." *Id*., at 1145.  Likewise, Turn Key was not the jail's medical contractor before 2018. Further, Plaintiff has never alleged a policy of the Sheriff that was implicated by Clinton's undiagnosed medical condition(s).

Plaintiff's reliance on *Sealock v Colorado* is equally misplaced.  In *Sealock,* the detention officer was "informed that appellant might be having a heart attack, and that he was present when appellant displayed symptoms consistent with a heart attack."  *Sealock v Colorado*, 218 F3d 1205, 1210 (10th Cir. 2000).  No such facts are alleged by Plaintiff in this case.  *Sealock* held "the second type of deliberate indifference occurs when prison officials prevent an inmate from receiving treatment or deny him access to medical personnel capable of evaluating the need for treatment."  *Id*., at 1211.  In this case by contrast, the proof is that the detention officers reported every medical need they saw.  Even Plaintiff's expert, Lenard Vare, agreed that was the case.  "I don't believe that I found, in the reviewing of the incident and the records that I reviewed, such an instance where corrections officers did not tell medical what they thought was going on."  ECF 74-18, Exhibit "18," Deposition of Lenard Vare, March 7, 2023, at 20.

The argument is not that the Sheriff is not liable for the actions of Turn Key's employees but rather the actions of Turn Key's employees demonstrate that detention officers reported every medical concern they observed to medical staff. The actions of Turn Key's licensed medical employees in reassuring the detention officers repeatedly that there was no basis for concern eliminates "deliberate" and

7

eliminates "indifference."  Characterizing it as an "empty chair" defense is simply sophistry.  Further, Plaintiff has no identified policy linkable to Clinton's death.  Indeed, Plaintiff's last desperate move is to claim a "systemic failure" by medical professionals with whom he has already settled.

Further, Plaintiff settled Turn Key and the medical director they employed and took them out of the case.  Plaintiff vacated their chair at the defense table and can hardly complain that it leaves a gapping hole in Plaintiff's case so large that the Sheriff is entitled to Summary Judgment.

    V.    <u>Alerting Medical Staff</u>

The Plaintiff's premise is that deliberate indifference in this case includes "a medical professional failing to treat a serious medical condition properly." ECF 91 at 8. Plaintiff cites *Sealock* at 1211. *Id.*, at 9.  Indeed, that is no longer in the case because Plaintiff dismissed the medical professionals with prejudice.  Further, Sealock added:  "First, a medical professional may fail to treat a serious medical condition properly.  Where this sort of conduct is alleged, the medical professional has available the defense that he was merely negligent in diagnosing or treating the medical condition, rather than deliberately indifferent." *Id*., at 1211.

The Plaintiff's other premise is deliberate indifference includes "a prison official *preventing* an inmate from receiving medical treatment or *denying* access to medical personnel capable of evaluating the inmate's condition."  *Id.*, at 1211 (emphasis added).  Plaintiff's expert, Lenard Vare, has eliminated this from this case.  "I don't believe that I found, in the reviewing of the incident and the records

that I reviewed, such an instance where corrections officers did not tell medical what they thought was going on." ECF 74-18, Exhibit "18," Deposition of Lenard Vare, March 7, 2023, at 20.  There is not a shred of evidence of prevention or denial of medical access or medical care *by a detention officer*.

Indeed, Plaintiff admitted various medical services were provided to Clinton, including a urinal, and when that was not enough, he was catheterized by the medical staff.  Plaintiff's Response to Motion for Summary Judgment, ECF 80 at 7, ¶8.  Additional lab tests were ordered by the physician employed by the jail medical contractor.  Plaintiff admitted it.  *Id*.  The urine output quantity and characteristics from catheterization was monitored and recorded.  Plaintiff admitted it.  *Id*.  Clinton's vital signs were monitored.  Plaintiff admitted it.  *Id*.  Clinton's blood sugar was monitored.  Plaintiff admitted it.  *Id*.  There is not a single documented refusal of detention staff to report medical conditions to medical staff.  There is not a single documented refusal of detention officers to allow treatment of Clinton.

Twenty years of cases have been reviewed by the 10th Circuit since *Sealock* and clearly indicate the limits on the duty of detention officers.  The actual test for deliberate indifference of a *detention officer* in a *medical care claim* is that "no constitutional violation occurs unless medical care is intentionally or recklessly denied."  *Boyett v County of Washington*, 2008 WL 2483286 at 5 (10th Cir. 2008) ("The record is replete with examples of correctional officers notifying the nursing staff about Boyett's medical needs in a timely manner").  *See also, Estate of*

9

*Beauford v Mesa County*, 35 F4th 1248, 1265 (10th Cir. 2022) (epilepsy) ("Prison officials generally may rely on advice and course of treatment prescribed by medical personnel."). In other words, if the detention officers did not deliberately ignore Clinton's medical needs, and indeed, sought access to medical care for him by informing medical staff, that was the extent of their duty. The detention officers did not have a duty to second guess prescriptions, treatments or diagnoses by the medical staff. Inadvertent failure to provide adequate medical care by a medical professional is not actionable as a constitutional violation. *Estelle v Gamble*, 429 US 97, 106 (1976). The rule cannot be any different for a lay person such as a detention officer. *See, Daniels v Gilbreath*, 668 F2d 477, 488 (10th Cir. 1982) ("We are unable to conclude that a physician must accept a lay recommendation of a drug which should be used").

The evidence that the detention officers reported to medical staff is admissible on the subject of deliberate conduct and on the issue of indifference.

VI.     <u>Futility of Treatment</u>

There is no testimony or document in the case about whether or not Clinton would have survived if the medical professionals charged with his care at St. Anthony Hospital or the Oklahoma County Detention Center had made different decisions. The Sheriff need put on no such proof. The futility argument was, indeed, injected when Plaintiff deposed Defendant's Medical Expert.

Regardless, the only question in the case is whether the detention officers were deliberately indifferent. As a matter of law and fact, neither "deliberately" or

"indifference" can be proven by Plaintiff. This is not a race to the hospital case. The detention officers reported every observed medical need to the medical staff and Clinton was treated by the medical staff. There is no particular medical treatment identified by Plaintiff that would have as a matter of reasonable medical certainty have saved Clinton's life in the near or far term. It quite simply is not an issue in the case, unless Plaintiff injects it by arguing Clinton would be alive "today" but for the failure to obtain a specific treatment or procedure not offered by St Anthony Hospital or the jail medical staff.

    VII.    <u>General Motions</u>

These motions are so poorly defined that response is problematic. No legal authority is provided for any of them. Typically, the Court's general instructions about what constitutes evidence, excluding comments by counsel as evidence in the typical instruction, will suffice to address all of these concerns.

Specific observations on "E" and "F" might be helpful.

    E.    <u>Taxpayers</u>.

The jury will be instructed the Sheriff is being sued in official capacity, the Plaintiff will through refer to the "county jail," and Assistant District Attorneys are defending the County pursuant to the statutory mandate they do so. The jurors will get the idea the taxpayers are being sued. Only if the Plaintiff raises the question, will an instruction be required that the only available vehicle for payment of the verdict requires a Judgment. 51 OS §158 (A) (last sentence); 19 OS §6. The Judgment must be approved by the Court. The Judgment must be entered

on the tax rolls by October of the year prior to the first year of tax roll inclusion or it must await the next year.  The Judgment is paid out over three (3) tax years.  62 OS §431 (A)(4).  *See, Excise Board of Pott. Cty v French*, 1949 OK 107, headnote 2.

The "adverse impact" of the judgment is another damages argument for reasonableness of the verdict.  Likewise, the Court's general instruction is sufficient to address it.

F. Clinton as a Drug Dealer.

If Plaintiff attempts to include lost wages or income in the evidence, as noted above, this might come in as the only truthful answer in response to the very legitimate questions about how Clinton made a living.  *See*, Deposition of Dwight Clinton, March 10, 2023 at 14.  (Q  Okay.  Do you know how he got the money to put gas in it?  A  Like I said, he -- I am not -- he -- he worked.  My brother wasn't the same.  He also sold drugs.").  In other words, Clinton's criminal history as a drug dealer may come up in response to simple damages questions such as, "how did he get money to put gas in his car?"  There is nothing untrue or prejudicial beyond the truth as admitted by Clinton's family, and the truth is often prejudicial.  *See, SEC v Peters*, 978 F2d 1162, 1171 (10th Cir. 1992).  Therefore, "[t]he exclusion of relevant evidence under Rule 403 is an extraordinary remedy to be used sparingly." *Sundance Energy Oklahoma, LLC v Dan D. Drilling Corp.*, 2015 WL 1957090 at 4 (WD Okla. 2015).

Respectfully Submitted,

VICKI ZEMP BEHENNA
DISTRICT ATTORNEY

  /s/ *Rodney J. Heggy*
Aaron Etherington (OBA 18,259)
Rodney J. Heggy (OBA 4049)
Carri A. Remillard (OBA 21,539)
Assistant District Attorneys
320 Robert S. Kerr, Suite 505
Oklahoma City, OK  73102
Telephone: (405) 713-1600
Facsimile: (405) 235-1567
aaron.etherington@oklahomacounty.org
rod.heggy@oklahomacounty.org
carri.remillard@oklahomacounty.org
ATTORNEYS FOR OKLAHOMA COUNTY SHERIFF

## CERTIFICATE OF MAILING

The foregoing was delivered by the ECF system or mailed postage pre-paid, if required on the date filed to:

Woodrow K. Glass
Travis E. Harrison
Geoffrey A. Tabor
Ward & Glass, L.L.P.
1601 N.W. 36th Avenue, Suite 100
Norman, Oklahoma 73072
woody@wardglasslaw.com
travis@wardglasslaw.com
geoffrey@wardglasslaw.com
405-360-9700
405-360-7902 (fax)

-and-

Beau Williams
Beau Williams Law Office
4901 Richmond Sq.
Oklahoma City, Oklahoma 73118
beauwilliamsatty@gmail.com
ATTORNEYS FOR PLAINTIFF

/s/ *Rodney J Heggy*