IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| EQULLA M. BROTHERS, as the Personal Representative and Administratrix of the Estate of Daryl Clinton, Deceased, | )<br>)<br>)<br>)<br>) | |
| Plaintiff, | )<br>) | |
| v. | ) | Case No. CIV-21-418-SLP |
| BOARD OF COUNTY COMMISSIONERS OF OKLAHOMA COUNTY; TOMMIE JOHNSON III, in his official capacity as Oklahoma County Sheriff; TURNKEY HEALTH CLINIC, LLC, an Oklahoma limited liability company; DR. KENT KING, individually; and JOHN DOES I-X, individually, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | |
| Defendants. | ) | |

**O R D E R**

Before the Court is the Motion to Exclude Plaintiff's Expert Lenard Vare by Defendant Oklahoma County Sheriff [Doc. No. 75]. Plaintiff has filed a Response [Doc. No. 81]. Defendant has been given the opportunity to file a reply, but has failed to timely do so. *See* LCvR 7.1 (i). For the reasons that follow, Defendant's Motion is DENIED.

**I.   Background**

On August 10, 2019, Daryl Clinton, a pretrial detainee at the Oklahoma County jail died. Mr. Clinton was booked in the jail four days prior, on August 6, 2010. This action, brought by his estate, involves whether Defendant violated Mr. Clinton's constitutional rights as a result of alleged denial of and/or access to medical care.

## II.     Plaintiff's Expert Witness Lenard Vare

Plaintiff identifies as an expert witness, Lenard Vare.  Mr. Vare's report contains three opinions:

> **Opinion #1**:  The Oklahoma County Sheriff's Office and its detentions division operating the Oklahoma County Detention Center were aware of the severity of Mr. Clinton's disability from the moment he was brought into the jail facility.  OCDC staff continued to interact with Mr. Clinton throughout his stay and more than a dozen different staff members saw him and knew that he was suffering from some form of medical issue that prevented him from moving his upper arms and hands and he required someone to provide basic needs such as feeding himself and drinking water.  Not one corrections staff member considered that 911 should be called and that Mr. Clinton needed to be taken to the emergency room.
>
> **Opinion #2**: The Oklahoma County Board of Commissioners, Oklahoma County Sheriff's Office, and its detention division operating the Oklahoma County Detention Center staff were on notice about prior treatment of inmates and detainees and had been made aware of the various violations of prisoner rights since 2008.  The County had agreed to enter an MOU with the United States Department of Justice and had committed to correct the issue.  The MOU required that the County would train both its medical and security staff to recognize and respond appropriately to medical emergencies.  This did not occur in the case of Mr. Clinton.
>
> **Opinion #3**:  It is evident from the acts and omissions of various corrections staff employed by the OCSO detentions division and assigned to the ODOC facility that they were not properly trained and did not know exactly what to do when faced with a medical emergency.  Although multiple supervisory and command staff were made aware of the severity of the ongoing medical issues at various times during Mr. Clinton's stay at the OCDC facility, everyone continued to abdicate their statutory responsibility as employees of the Oklahoma County Sheriff's Office and insist that Turnkey medical staff was solely responsible for making medical decisions.  This was an incorrect interpretation of what the corrections staff's responsibilities should be and I can only place the blame on the lack of training for such a significant level of failure.

Vare Expert Report [Doc. No. 75-1].

Defendant moves to exclude Mr. Vare's expert opinion on the following grounds: (1) the opinion is inconsistent with Mr. Vare's recent prior opinions "due to the lack of objective standards or bias"; and (2) the opinion is inconsistent with Mr. Vare's own findings in the record "due to the lack of objective standards or bias."

In response, Plaintiff distinguishes the factual and legal underpinnings of the cases in which Mr. Vare provided his prior opinion testimony. And Plaintiff points to record evidence demonstrating that detention staff at the jail were aware of Mr. Clinton's need for medical treatment and concerned about the level of medical care provided to Mr. Clinton by the medical staff. Accordingly, Plaintiff contends Defendant's attempt to exclude Mr. Vare's opinion testimony is based on a faulty premise.

**III.   *Daubert* Standard**

Expert testimony is admissible if it meets the standard set forth in Rule 702 of the Federal Rules of Evidence: "A witness who is qualified as an expert by knowledge, skill, experience, training, or education" can provide opinion testimony if:

> a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> b) the testimony is based on sufficient facts or data;
>
> c) the testimony is the product of reliable principles and methods; and
>
> d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The Court's "gatekeeping role" under Rule 702 has two parts. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). First, the court must determine whether the

3

expert is qualified. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc). If sufficiently qualified, the court must then determine whether the expert's opinion is reliable and relevant in that it will assist the trier of fact. *Id.; see also United States v. Rodriguez-Felix*, 450 F.3d 1117, 1122 (10th Cir. 2006) (The district court "must satisfy itself that the proposed expert testimony is both reliable and relevant, in that it will assist the trier of fact, before permitting a jury to assess such testimony."). Determining whether an expert's opinion will assist the trier of fact requires the court to consider the relevance of the testimony, the common knowledge and experience of the jurors and whether the testimony will usurp the jury's role as the evaluator of the evidence. *Rodriguez-Felix*, 450 F.3d at 1123. When the testimony of an expert is challenged, the proponent of the testimony bears the burden of establishing its admissibility. *Nacchio*, 555 F.3d at 1241; Fed. R. Evid. 104(a).

## IV.   Discussion

Defendant does not challenge Mr. Vare's qualifications as an expert and the record supports a finding that he is sufficiently qualified. Instead, Defendant's challenge is directed to the reliability of Mr. Vare's opinion on grounds it is inconsistent with Mr. Vare's opinions in prior cases and the evidence of record in this case.

In moving for exclusion of Mr. Vare's expert opinion, Defendant only specifically references Mr. Vare's Opinion #3. The Court's analysis, therefore, is limited to Opinion #3. Within Opinion #3, Defendant particularly focuses on the following conclusion reached by Mr. Vare:

4

> Although multiple supervisory and command staff were made aware of the severity of the ongoing medical issues at various times during Mr. Clinton's stay at the OCDC facility, everyone continued to abdicate their *statutory responsibility* as employees of the Oklahoma County Sheriff's Office and insist that Turnkey [sic] medical staff was solely responsible for making medical decisions.

Def.'s Mot. at 8 (citing Vare's Expert Report at 56) (emphasis added).

First, Defendant argues that Mr. Vare's opinion is inconsistent with his opinion in two prior cases in which Mr. Vare opined that detention officers are "required to follow the instructions of qualified medical personnel in the treatment, care and custody of inmates." *Id*. The two cases Defendant references are *Hernandez v. Alameda*, Case No. CIV-2020-2884 (N.D. Cal.) and *Mkrtchyan v. Sacramento Cnty.*, Case No. CIV-2017-2366 (E.D. Cal.). According to Defendant, Mr. Vare has "simply disregarded his prior opinion about applicable standards." *Id*. In making this argument, Defendant fails to discuss the factual and legal issues involved in either of the referenced cases.

Defendant additionally argues that the statutory responsibility to which Mr. Vare refers, Okla. Stat. tit. 57, § 52, does not provide a basis for his opinion. Defendant's argument is conclusory and undeveloped.[1]

---

[1] Section 52 provides in relevant part:

> It shall be the duty of the sheriff of each county to provide bed clothing, washing, board and medical care when required, and all necessities for the comfort and welfare of prisoners as specified by the standards promulgated pursuant to Section 192 of Title 74 of the Oklahoma Statutes and he shall be allowed such compensation for services required by the provisions of Sections 41 through 64 of this title, as may be prescribed by the county commissioners.

Okla. Stat. tit. 57, § 52.

5

Defendant further argues that Mr. Vare's opinion is contrary to his own record findings. Specifically, Defendant challenges Mr. Vare's opinion that "not a single corrections personnel felt that they needed to question the inaction and refusal to treat Mr. Clinton by Turnkey [sic] staff." Def.'s Mot. at 10 (quoting Vare Expert Report at 56-57). Defendant cites to Mr. Vare's deposition testimony in which Defendant contends Mr. Vare "admitted" the following facts: (1) he did not find any incident in the record where corrections officers did not tell medical what they thought was going on with respect to Mr. Clinton; (2) at least two registered nurses were advised of Mr. Clinton's situation by detention officers; (3) detention officers were told that the medical director, a physician, thought that Mr. Clinton's alleged paralysis was a "psych issue"; and (4) medical staff reassured detention officers "probably more than twice" that they had nothing about which to be concerned. *Id*. at 9-10 (citing Vare Dep. [Doc. No. 75-2] at 20, 23).

Finally, Defendant contends that Mr. Vare "bedrocks his opinion" on an improper citation to the applicable standard. Defendant argues that the proper standard – the Emergency Response standard of the American Correctional Association (ACA) – "does not apply to chronic medical conditions, pre-existing medical conditions or, indeed, anything treatable." Def.'s Mot. at 11. Although Defendant has referenced this standard, Defendant has not provided the Court with the language of the applicable standard or otherwise made any reference to the record regarding this standard.[2]

---

[2] The Court notes that the standard is referenced in Mr. Vare's expert report. *See* Vare Expert Report at 57.

In response, Plaintiff first addresses the expert report Mr. Vare provided in the *Mkrtchyan* case (the Mkrtchyan Report). Plaintiff argues that case, and necessarily therefore the opinion rendered in that case, is factually distinguishable. According to Plaintiff, in the *Mkrtchyan* case, "evidence unequivocally established the prisoner was faking/exaggerating his foot injury while in jail to manipulate specialty housing from staff." Pl.'s Resp. at 3. And Plaintiff further distinguishes the *Mkrtchyan* case on grounds that "there simply was no basis for security staff to doubt or question the level of care given to the plaintiff." *Id*. at 3-4.

Plaintiff also distinguishes the expert report Mr. Vare provided in the *Hernandez* case (the Hernandez Report). *See* Doc. No. 75-2.[3] According to Plaintiff, in the *Hernandez* case "the ultimate cause of the decedent's death was a sudden onset of an infection that had presented no symptoms whatsoever on prior evaluations" and, therefore "[t]here was simply nothing in the record to suggest that there were physical signs . . . observable by security staff that were bluntly ignored by medical staff." *Id*. at 4.

In this case, conversely, upon his arrival at the Oklahoma County jail, Mr. Clinton exhibited signs that he had difficulty sitting and using his arms and hands. He required catheterization because he could not urinate. And his symptoms continued to get worse over the course of Mr. Clinton's detention. Notwithstanding these signs and symptoms, medical staff continued to take the position that Mr. Clinton was a malingerer and was

---

[3] The Court references the exhibits attached to Defendant's Motion. Plaintiff has also attached as exhibits to her Response both the Mkrtchyan and Hernandez Reports. Plaintiff is admonished to follow LCvR 7.1(n) in future filings before this Court.

"faking it." Multiple instances in the record demonstrate that detention staff were aware of and concerned about the level of medical care, or lack thereof, provided to Mr. Clinton by the medical staff. Plaintiff details this evidence in her Response.

As Plaintiff aptly summarizes there is "simply a foundational difference between the case at bar and *Mkrtchyan* and *Hernandez* that completely undermines Defendant's Motion. *Id*. at 10. Here, Plaintiff submits evidence to support a finding that detention staff, through their own inaction, unreasonably delayed Plaintiff's medical care and/or unreasonably relied on medical staff. *See, e.g., Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000) (addressing factual issues that precluded summary judgment on prisoner's deliberate indifference claim arising from prison guard's refusal to transport prisoner to doctor or hospital after observing prisoner as pale, sweating and vomiting, and being told that prisoner was or might be having a heart attack); *Weatherford ex rel. Thompson v. Taylor*, 347 F. App'x 400, 404 (10th Cir. 2009) ("unreasonable reliance on the advice of a medical professional will not excuse deliberate indifference to a prisoner's serious medical needs").

For this same reason, Defendant inaccurately portrays the record with respect to Mr. Vare's purported "admissions" regarding detention staff's communications with medical staff about Mr. Clinton. Certainly, Mr. Vare acknowledged communications relayed by staff to medical regarding Mr. Clinton's condition. But Mr. Vare's opinion is not based on detention staff's failure to communicate with medical. Instead, Mr. Vare's opinion is based on detention staff's failure to question the medical staff's inaction and refusal to treat Mr.

Clinton based on their continued observations of Mr. Clinton demonstrating he was not malingering.

Under these circumstances, Defendant has failed to meet its burden to show that Mr. Vare's expert opinion should be excluded as unreliable. At best, Defendant raises issues as to the weight and credibility to be afforded his testimony – issues appropriately left for the jury's determination. *See Util. Trailer Sales of Kansas City, Inc. v. MAC Trailer Mfg., Inc.*, 267 F.R.D. 368, 370 (D. Kan. 2010) ("The weight and credibility of expert testimony are for the trier of fact to determine.") (citations omitted).

### V.  Conclusion

IT IS THEREFORE ORDERED that the Motion to Exclude Plaintiff's Expert Lenard Vare by Defendant Oklahoma County Sheriff [Doc. No. 75] is DENIED.

IT IS SO ORDERED this 15th day of June, 2023.

SCOTT L. PALK
UNITED STATES DISTRICT JUDGE